[L. A. No. 973.   In Bank.—November 18, 1902.]

## PHILO J. BEVERIDGE, Respondent, v. MARY A. LEWIS, Appellant.

EMINENT DOMAIN—CONDEMNATION—PUBLIC USE—PURPOSE OF TRANS-
FER.—Land can be condemned only by one who is in charge of a
public use, and cannot be condemned for a right of way by one
who is not engaged in and does not contemplate the building of a
railway, for the sole purpose of transferring the same to a railway
company engaged in building a railway, by which he is employed,
and with which he has contracted to transfer the right of way.
One who seeks a right of way to sell merely is not in charge of a
public use.

ID.—AGENCY—PLEADING.—If a proceeding for eminent domain may be
in the name of an agent or other representative, such agency should
be stated.

ID.—JUST COMPENSATION—CONSTITUTIONAL LAW—DEDUCTION OF GEN-
ERAL BENEFITS TO LAND NOT TAKEN—INVALID CODE PROVISION.—
Under section 14 of the state constitution, which provides for just
compensation in all cases of land taken for public use, the legisla-
ture cannot provide that the property-owner shall receive a smaller
sum for the taking of the land by a natural person than when it is
taken by a corporation.   There can be no deduction for general
benefits to land not taken in any case; and section 1248 of the Code
of Civil Procedure, allowing such benefits to be deducted in the case
of a natural person which cannot be allowed under the constitution
in favor of a private corporation, is invalid.

APPEAL from a judgment of the Superior Court of Los
Angeles County and from an order denying a new trial.
W. F. Fitzgerald, Judge.

The facts are stated in the opinion of the court.

Lynn Helm, for Appellant.

John D. Pope, for Respondent.

TEMPLE, J.—The plaintiff, a natural person, commenced
this action to condemn a strip of land through premises owned
by defendant for a right of way for a railroad.   It is averred
in the complaint that the board of supervisors of Los Angeles
County had granted to plaintiff a franchise to construct and
maintain an electric railway in the county of Los Angeles,

over and along a route shown upon a map annexed to the complaint. The line described nearly bisects the land of defendant, which is a rectangular tract containing one hundred and twenty acres. The strip sought to be condemned for the right of way is thirty-five feet wide.

The matter was submitted to a jury, which, framing its verdict according to the statute, found that the land to be taken was of the value of $429 on the twenty-fifth day of November, 1899, when the proceeding was commenced; that the land not taken would be damaged to the extent of $2,000, and that such land would be benefited by the construction of the proposed road to the extent of $500; that fencing the right of way would cost $233.64.

A motion for a new trial was denied, and from such order and from the judgment this appeal is taken.

There are many assignments of error, but the two principal points, as I think, are these: 1. The court erred in not allowing defendant to prove that the plaintiff was not the proper party to commence this proceeding; that he was not a person in charge of a public use; and 2. In allowing plaintiff to set off benefits against the damage to land not taken.

The defendant offered evidence tending to show that plaintiff was not engaged in building a railway, and did not contemplate doing so; that he was an employee of the Los Angeles Pacific Railway Company, a corporation, and was endeavoring to secure a right of way for that corporation and not for himself; that he had contracted to convey, or to cause to be conveyed, to that corporation such rights as he should obtain, and that property-owners along the proposed line, from whom rights of way had been obtained, had, at his instance, conveyed such rights to that company, and that all grading done or road constructed had been at the expense of the Los Angeles Pacific Railway Company, to which plaintiff had agreed to convey the franchise granted to him. Each particular item of the evidence was separately offered, objected to, and objection sustained, and the ruling excepted to.

The offer was in fact to show that plaintiff was seeking to condemn the right of way solely for the purpose of transferring the same at once to the Los Angeles Pacific Railway, which was engaged in building the railway, and which would own and operate it.

The evidence was relevant, material, and competent. It was offered for the purpose of showing that the real party in interest was a corporation, with a view of enhancing the damage, as it was claimed that if the corporation was the real party in interest benefits could not be set off against the damage to land not taken, while perhaps if a natural person was in charge of the use and was seeking to acquire such right of way, such benefits might be allowed as a credit. But the point cuts much deeper than that. If the court were convinced that the facts were as contended, the plaintiff should not be allowed to maintain the proceeding at all. It is admitted on all sides, and necessarily, that the proceeding can be maintained only by one who is in charge of a public use and who intends to perform the public service. And further, if the proceedings may be in the name of an agent or other representative, such agency should be stated. One who seeks a right of way to sell merely is not in charge of a public use.

But is there a different rule for estimating the damage when a natural person is in charge of a public use, and is seeking to take property for that use, and when a private corporation is the plaintiff in such a proceeding? In Department it was assumed that section 14 of article I of our state constitution discriminates in favor of natural persons and municipal corporations and against private corporations seeking to condemn land for a right of way, and it was held that the constitutional provision was void because in conflict with the fourteenth amendment to the constitution of the United States, in which it is ordained that no state shall "deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law." On reflection, I am satisfied that the section in question neither does nor directs the doing of any of those acts which are forbidden in the fourteenth amendment. It certainly does not authorize the taking of property without due process of law. On the contrary, it provides very ample protection in that regard. Neither does it deprive any person or property of the equal protection of the law. The section reads as follows: "Sec. 14. Private property shall not be taken or damaged for public use without just compensation having been first made to, or paid into court for the owner, and no right of way shall be appropriated to

the use of any corporation other than municipal until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefit from any improvement proposed by such corporation, which compensation shall be ascertained by a jury, unless a jury be waived, as in other civil cases in a court of record, as shall be prescribed by law.''

It is a mere limitation upon the power of the legislature in regard to eminent domain. No private railroad corporation can be permitted to appropriate a right of way over private property until compensation is first made in money, without deduction for estimated benefits from the improvement. It does not authorize any other persons—natural or artificial—to take property on more favorable terms. It is purely negative in its character. If the legislature had prescribed a similar rule for all condemnation proceedings, no one would have thought that this section secured special privileges to or specially burdened any class of persons. A constitutional limitation in itself valid and not in conflict with the federal constitution cannot be made invalid by any act of the legislature. This will, of course, be conceded.

The statute in terms prescribes a uniform rule for all cases. (Code Civ. Proc., sec. 1248.) It authorizes a deduction for benefits in all cases. It is made to have an unequal operation, because one provision cannot be enforced in cases where a corporation other than municipal is endeavoring to condemn land for a right of way. The difference between the constitutional provision and the code was commented upon in *Moran* v. *Ross,* 79 Cal. 549, and it was there held that the effect of both was to impose a greater burden upon corporations other than municipal than was imposed upon natural persons. Conceding the validity both of the statute and of the constitutional provision, and that a natural person could be in possession of a public use which would authorize him to condemn land for a right of way, the conclusion seems logical. It is now, however, earnestly contended that the statute and the constitution together produce an inequality which is forbidden, and it matters not that the effect is the result of the constitution and of the statute together. In Department the difficulty was solved by declaring the constitutional rule invalid. This solution is, however, I am convinced, inadmissi-

ble.  The question must be, Can the statute be sustained?
And in considering this point we need not look to the four-
teenth amendment.  Our state constitution equally prohibits
discrimination not justified by intrinsic differences, and re-
quires a uniform operation of general laws.  The case has been
argued entirely from the standpoint of the person in charge
of a public use who is seeking to acquire property by con-
demnation; but it is equally important to consider the ques-
tion from the position of the property-owner.  Can the
legislature provide that he shall receive a smaller sum for the
taking of the land when it is taken by a natural person than
when it is taken by a corporation for precisely the same use,
especially when the natural person may at once transfer his
property to the corporation?  Or suppose two cases: Land
belonging to one person is being taken by a natural person
and other land belonging to him by a corporation, the uses and
burdens being in all respects similar.  Can the law provide
that in one case an allowance shall be made for supposed
benefits and not in the other?  I think it must be answered
that the legislature cannot provide for the one case a less
favorable rule than the constitution has provided for the
other.  They are entitled to the equal protection of the law,
or, as was said in *Yick Wo* v. *Hopkins,* 118 U. S. 356, "the
protection of equal laws."

Section 14 prescribes that in all cases of taking property
for public use just compensation shall be first made.  Under
this clause a rule could not be sustained which would not fully
compensate the property-owner, but the legislature is not
limited to a rule which will only compensate the property-
owner, and if a law were enacted which would be valid there
would be no constitutional difficulty.  It must always be for
the judiciary to determine whether full compensation is pro-
vided.  It is necessary, also, that the compensation provided
must be in money.  (2 Lewis on Eminent Domain, sec. 460,
and authorities cited.)  Of course, this must be so.  The
constitutional limitation would be of little value if the legis-
lature could authorize payment in any commodity or con-
jectured advantage it might choose.

Benefits are said to be of two kinds, general and special.
General benefits consist in an increase in the value of land
common to the community generally, from advantages which

will accrue to the community from the improvement. (Lewis on Eminent Domain, sec. 471.) They are conjectural and incapable of estimation. They may never be realized, and in such case the property-owner has not been compensated save by the sanguine promise of the promoter.

Special benefits are such as result from the mere construction of the improvement, and are peculiar to the land in question. The trend of decision is very decidedly to the conclusion that general benefits shall not be allowed as a set-off to damages, even when no statute prescribes a contrary rule. (Lewis on Eminent Domain, sec. 471, notes 44 and 45.) Such appears to be the conclusion of Judge Cooley (Const. Lim. 567-580).

The question has been very much discussed, and now in a majority of states the rule is against the credit of such benefits, established variously by constitution, by statute, or by judicial decision.

I am satisfied that in a proceeding to condemn a right of way, at least by a corporation other than municipal or by a natural person, such benefits cannot be set off against damages to lands not taken under our present constitution. Prior to the adoption of the present constitution the supreme court had decided, in a case where it was found that there were no special benefits, but only general benefits, as I have defined them, that such benefits could be set off against damages, and that by this rule the owner was fully compensated. (*California Pac. R. R. Co.* v. *Armstrong,* 46 Cal. 85.) By section 14, involved here, I believe the people intended to overrule this case and other like decisions, so far as applicable to private railroad corporations. But I think it must be assumed that the intention was to provide in the constitution a rule which would justly compensate the land-owner, and that there was no intention of discriminating unjustly against any; and, in my opinion, the rule of the constitution is the just and proper rule, and furthermore, if the allowance of a credit for such benefits were not expressly prohibited they are impliedly prohibited by other clauses of the same section.

In the first place, such benefits are uncertain, incapable of estimation, and future. Compensation must be made in money and in advance. The property-owner, therefore, cannot be compelled to receive his compensation in such vague specula-

tions as to future advantages, in which a jury may be induced to indulge.

And then for the reasons usually given for the disallowance of credit for such benefits by the courts when they are not governed by any constitutional or statutory rule; some of the reasons are as follows:—

The chance that land will increase in value as population increases and new facilities for transportation and new markets are created is an element of value quite generally taken into consideration in the purchase of land in estimating its present market value. This chance for gain is the property of the land-owner. If a part of his property is taken for the construction of the railway, he stands in reference to the other property not taken like similar property-owners in the neighborhood. His neighbors are not required to surrender this prospective enhancement of value in order to secure the increased facilities which the railroad will afford. If he is compelled to contribute all that he could possibly gain by the improvement, while others in all respects similarly affected by it are not required to do so, he does not receive the equal protection of the law. The work is not being done for his benefit, but for the pecuniary advantage of those who are constructing it. The law will not imply a promise on his part to pay anything toward it.

His property will be similarly benefited by many of the improvements in the vicinity,—by the erection of mills, schoolhouses, churches, etc.,—as will also the railroad after it has been constructed. This expected enhancement of value through the general improvement of the country is a legitimate motive for investing in property or for building a railroad. The improvements made by each one adds to the value of all the property in the vicinity. The right to share in the general prosperity cannot be taken from any one for the advantage of others.

In consideration that the community will be benefited, private persons are allowed to exercise the right of eminent domain. The parties constructing a railroad agree to thus serve the public, being allowed to charge for the service. The consent of the public to this use of the right of eminent domain included the consent of the property-owner. To compel

CXXXVII. Cal.—40

him to give up or pay full value for his share of the common benefit is to take from him the consideration for which he gave his consent while others are allowed to retain it. In this he is not equally protected by the law. (Lewis on Eminent Domain, sec. 471, and authorities cited in note.)

Special benefits, as I have said, are such as are peculiar to the property which it is alleged has been damaged, such as are reasonably certain to result from the construction of the work. Illustrations are afforded where a marsh will be drained or levee built which will protect the land from floods. It is generally thought that different considerations must be applied to such benefits. They are not involved here.

Often special benefits, which afford protection to the land, or will at once render it more productive, are taken into consideration in determining how much land not taken will be damaged. Only the arbitrary rule of the statute which requires separate findings of benefit and damage will prevent this. These are matters, however, which need not be determined in this case.

The judgment and order are reversed and a new trial ordered.

Harrison, J., Van Dyke, J., Henshaw, J., Beatty, C. J., concurred.

McFARLAND, J., dissenting.—I dissent, and think that the judgment should be affirmed. I adhere to the opinion delivered and the conclusion arrived at in Department. I desire to add only that, in my judgment, the intent of section 14 of article I of our state constitution to discriminate against corporations other than municipal, and against them alone, is so obvious as to leave no room for doubt on the subject. Clearly a constitutional provision must be construed in the light of the law as it stood when the provision was adopted. Now, at the time of the adoption of the provision in question the established law of this state was, that *in all cases* of the exercise of the power of eminent domain— irrespective of the character of the persons seeking to exercise it—the owner of the land taken was entitled to only "just compensation"; and that, in determining what was just compensation, as was said in *San Francisco etc. R. R. Co.* v.

*Caldwell,* 31 Cal. 368, the weight of authority is in favor of "allowing benefits and advantages to be considered in estimating what is a just compensation to be awarded in such cases, and it seems to us that the reasons in support of this view of the subject are unanswerable." (See, also, *California Pac. R. R. Co.* v. *Armstrong,* 46 Cal. 85.) That was the law of the state, and it included the consideration of general as well as special benefits. Now, the purpose of the constitutional provision in question was not to change that judicially determined just principle as to any person except a private corporation; it was to stand as to all other persons, and it forever *prohibits the legislature* from allowing that just principle to be invoked by such a corporation. If that is not a discrimination founded upon no intrinsic or natural difference, and therefore in violation of the federal constitution, I cannot imagine how such a discrimination could exist.

The following is the opinion of Department Two, rendered on the 25th of February, 1902, referred to in the dissenting opinion of Justice McFarland:—

McFARLAND, J.—The plaintiff, a natural person, having obtained a franchise to construct and operate a certain railroad, commenced this action to condemn a right of way for a part of its line of railway through the land of defendant. In the trial court plaintiff had judgment, from which and from an order denying her motion for a new trial defendant appeals.

The main question in the case relates to the amount of compensation which the appellant was entitled to for the value of the land taken and damages for land not taken. The jury found the value of the land taken to be $429; damages to the land not taken, $2,000; and for costs of fences and cattle-guards, $233.84. It also found that the benefit from the construction of the railroad to the land not taken was $500. Upon this basis the court fixed the amount to be paid appellant at $1,929, which appellant contends was too small.

There are one or two minor matters to be disposed of. Appellant contends that the court erred in not sustaining her challenge to the juror Newell. On this point it is sufficient to say that after considering all the testimony of the

juror we cannot say that the court erred in holding that he had not such an unqualified opinion about any question in the case as to make him an unfit juror.

It is contended that the court erred in instructing that in estimating damages "the jury are permitted to exercise, in weighing the evidence, their individual judgment as to values upon subjects within their knowledge which they have acquired through experience and observation." Although this instruction seems, at first blush, to be somewhat questionable, yet it does not go as far as appellant claims. It is not an instruction that the jury may shut their eyes to the evidence before them and decide the case according to their own notions; it, in effect, merely tells them that "in weighing the evidence" they may do, what jurors always do, exercise their judgment in the light of their own general knowledge of the subject about which evidence has been introduced. This statement has been frequently sanctioned by courts. This court itself said, in *Cederberg* v. *Robison,* 100 Cal. 93,—almost in the very language of the instruction here assailed,—that "jurors are permitted to exercise their individual judgments as to values presumptively within their own knowledge, which they have acquired through experience or observation"; and it approved that ruling in *Butler* v. *Ashworth,* 102 Cal. 663. In *Patterson* v. *Boston,* 20 Pick. 159, Chief Justice Shaw said: "Jurors would be very little fit for the high and responsible office to which they are called, *especially to make an appraisement,* which depends on knowledge and experience, if they might not avail themselves of these powers of the mind when they are most necessary to the performance of their duties." And Justice Field, in delivering the opinion of the United States supreme court in *Head* v. *Hargrave,* 105 U. S. 45, said that jurors "may, and to act intelligently must, judge of the weight and force of that evidence by their own general knowledge of the subject of inquiry." (See, also, *City* v. *Butterfield,* 89 Mo. 646.) Moreover, the evidence in the case at bar as to values was substantially all opinion evidence; and as to that kind of evidence the rule stated in the instruction is beyond all doubt correct. (*McLean* v. *Crow,* 88 Cal. 644; *Haight* v. *Vallet,* 89 Cal. 245; Rogers on Expert Testimony, 2d ed., p. 487, sec. 207, subd. 4, and the numerous cases there cited.) We

are of the opinion that the instruction in question was not erroneous; and it may be further said that it could have done no harm, for it merely permitted the jury to do what they would necessarily and inevitably have done if the instruction had not been given.

It was not error for the court to tell the jury that they might consider benefits to the land not taken, although such benefits also accrued to other land in the vicinity. (*California Pac. R. R. Co.* v. *Armstrong,* 46 Cal. 85; *San Francisco etc. R. R. Co.* v.. *Caldwell,* 31 Cal. 368.)

Upon the main question in the case—that is, upon what basis should the estimation of compensation be made—it is not necessary to notice in detail the various instructions given and those which were asked by appellant and refused. It is sufficient to say that the court presented the case to the jury, and rendered judgment upon the theory that appellant was entitled to the full value of the land taken, and damages to the land not taken less the benefits to such land by the improvement. It is not seriously contended that this is not the correct rule where the party seeking the condemnation is a natural person or a company of natural persons not incorporated; but it is contended that where such party is a corporation, not municipal, there, under section 14 of article I of our state constitution, no right of way shall be appropriated "until full compensation therefor be first made in money, or ascertained and paid into court for the owner, *irrespective* of any benefit from any improvement proposed by such corporation." And appellant sought to bring this case within that provision by offering evidence to the point that respondent had some understanding with a corporation called the Los Angeles Pacific Railroad Company, by which the latter was to receive the benefit of the condemnation, and was therefore the real party in interest. An objection by respondent to this offered evidence was sustained; and upon that ruling the main contention of appellant is based. Counsel for respondent contends that proof of the fact sought to be proven would not be admissible under any view, and, moreover, that the kind of evidence offered was not admissible to prove the fact; but we will not closely examine these contentions, because we are of opinion that his other contention, that said provision of section 14 of article I is invalid because

repugnant to the fourteenth amendment of the constitution of the United States, must be maintained.

The fourteenth amendment to the federal constitution is a limitation of the powers of a state. It provides that no state shall "deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law"; and it is definitely settled that a corporation is a "person" within the meaning of the amendment. (*Santa Clara Co.* v. *Southern Pac. R. R. Co.,* 118 U. S. 396.) "It is well settled that corporations are persons within the provisions of the fourteenth amendment of the constitution of the United States. The rights and securities guaranteed to persons by that instrument cannot be disregarded in respect to these artificial entities called corporations any more than they can be in respect to the individuals who are the equitable owners of the property belonging to such corporations. A state has no more power to deny to a corporation the equal protection of the law than it has to individual citizens." (*Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 154, and cases there cited.)

Of course, a state cannot by its own constitution, any more than it can by an act of its legislature, evade a provision of the federal constitution. This is too obvious for argument; to hold otherwise would be, as was said in *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 154, "to make the prohibitory clauses of the fourteenth amendment a mere rope of sand, in no manner restraining state action." (See *In re Tuthill,* 163 N. Y. 133.[1])

The provision that a state shall not "deny to any person within its jurisdiction the equal protection of the law" is violated by a discrimination between persons which is not based upon any natural, reasonable, or intrinsic distinction, and places on one person burdens from which other persons similarly situated are relieved. And the principle cannot be evaded by means of a mere arbitrary classification. Classification, to be valid, "must be for the purpose of meeting different conditions naturally requiring different legislation." (*Darcy* v. *Mayor of San Jose,* 104 Cal. 642, and cases there cited.) In *Gulf etc. Ry. Co.* v. *Ellis,* 165 U. S. 154, where it was held that a state law putting certain burdens of litigation on railroad corporations which were not imposed on other

---

[1] 79 Am. St. Rep. 574.

litigants was void under the fourteenth amendment, the whole
subject is elaborately discussed and many authorities cited,
the supreme court of the United States saying: "But arbi-
trary selection can never be justified by calling it classifica-
tion.  The equal protection demanded by the fourteenth
amendment forbids this.  No language is more worthy of fre-
quent and thoughtful consideration than these words of Mr.
Justice Matthews, speaking for the court, in *Yick Wo* v.
*Hopkins*, 118 U. S. 356, 369: 'When we consider the nature
and theory of our institutions of government, the principles
upon which they are supposed to rest, and review the history
of their development, we are constrained to conclude that
they do not mean to leave room for the play and action of
purely personal and arbitrary power.' "  And in that case
the court, after a full consideration of the subject, say: "It
is apparent that the mere fact of classification is not sufficient
to relieve a statute from the reach of the language of the
clause of the fourteenth amendment, and that in all cases it
must appear not only that a classification has been made,
but also that it is one based upon some reasonable ground,—
some difference which bears a just and proper relation to the
attempted classification,—and is not a mere arbitrary selec-
tion."

The case of *Johnson* v. *Goodyear Mining Co.*, 127 Cal. 4,
is substantially determinative of the question here involved
against the contention of appellant.  It was there held that
an act of the legislature imposing upon corporations alone
certain burdens as to contracts and liens—not arising out of
natural conditions—was "discriminating and arbitrary legis-
lation against corporations," and "denies to such corpora-
tions the equal protection of the laws, and is unconstitutional
and void."  In that case the court, after again stating the
proposition that "the word 'person' within the meaning of
the fourteenth amendment to the constitution of the United
States applies to a corporation," say that "the classification
must be founded upon differences either defined by the con-
stitution, or natural, or which will suggest a reason which
might naturally be held to justify the diversity of legisla-
tion," and that "there is no reason why a different rule as
to defenses that may be pleaded and proven and as to the
nature of the lien of a judgment should obtain against a

corporation than that which applies to other litigants.''
Now, there is absolutely no natural or reasonable distinction
between different persons seeking to exercise the right of
condemnation, with respect to the measure of compensation
for the land taken and damages for land not taken. A law
might, perhaps, rightfully discriminate between *the business*
of operating a railroad and some other kinds of business;
but as between parties intending to engage in that business
the right of way is the same, no matter what "person"
appropriates it, and there is no reason why one person should
pay more for it than another person, except a desire to
unjustly discriminate.

It is argued that even if the above propositions are, as a
general rule, true, still they do not apply to the case of the
exercise of the right of eminent domain. It is said that this
right belongs to the state by virtue of its sovereignty, and that
therefore the state may exercise the right with as much
favoritism as it pleases. But the right to make laws upon
the subject of eminent domain is no different from the right
to make laws on any other subject; the right to make laws at
all is a sovereign power. But that power must be exercised
within constitutional limits. The state could, no doubt, re-
fuse to grant to any person the right to exercise the power
of eminent domain,—as it could refuse the right to a writ of
attachment to any one; but when it does legislate upon either
subject, it must do so within the constitutional limitation
against arbitrary discrimination. No one would contend that
the power of condemnation could be legally given to persons
having light hair and denied to persons having dark hair;
and yet to say that this could not be done is to give up the
whole contention. However, this contention has been definite-
ly held untenable in *Pasadena* v. *Stimson*, 91 Cal. 238. That
case dealt expressly with a law giving the right to exercise the
power of eminent domain; and it was decided that a statute
which imposed burdensome conditions to the exercise of the
right upon certain municipal corporations which were not
imposed on other municipal corporations, was unconstitution-
al and void. In that case Chief Justice Beatty, in delivering
the opinion of the court, having referred to the general law
(Civ. Code, sec. 1001) giving to "any person" the right to
use the power of eminent domain, and to the proposition that

"a corporation, whether private or public, is a person," said: "But the mode of exercising the power of eminent domain, and the conditions upon which it may be invoked, are no part of municipal organization. They are the subject of general laws applicable to every person alike, and the legislature has no power to make *arbitrary discriminations* in this respect between *different classes of persons*." And in replying to the position—which is also taken in the case at bar—that the plaintiff in the condemnation proceeding is a mere "agent" of the state, he says: "In reaching this conclusion we have not overlooked the argument of appellants that, since the plaintiff in such proceedings is always a mere agent of the state, and acting on its behalf, he cannot question the conditions upon which his principal authorizes him to act. We think this rather a fanciful argument, and that it is based upon a supposed analogy which has no real existence. It is, in a very modified sense, that the state is the principal and the plaintiff the agent in cases like this. Such may be the theoretical view, but, practically, it is the reverse of the truth. The party directly and beneficially interested is the person in charge of the use." And it might be added that he, and not the state, is the party who pays the compensation to the owner of the land taken and damaged.

We think that the foregoing views cover, substantially, all the questions raised in the case; and, in accordance with those views, we are of the opinion that the judgment of the court below was right.