[Civ. No. 5774. Second Appellate District, Division One.—December 20, 1928.]

COUNTY OF LOS ANGELES, Respondent, v. MARBLE-HEAD LAND COMPANY (a Corporation) et al., Appellants.

Richard Hartley and William J. Clark for Appellants.

Mortimer A. Kline and Hill, Morgan & Bledsoe for Respondent.

CONREY, P. J.—This is an action brought by the County of Los Angeles to condemn a right of way for a portion of the state highway running between Oxnard in Ventura County and San Juan Capistrano in Orange County. After an extended trial the court made findings of fact, upon which an interlocutory decree was entered, directing payment to the defendants of specified sums in accordance with their several interests in the land as determined by the court, and providing that upon payment of said sums the lands sought to be taken be condemned and taken by the plaintiff for the purposes of said highway. The defendants appeal from the judgment.

In the year 1913 the legislature enacted a law entitled "an act to permit counties to acquire rights of way for state highways and bridges within their limits and authorizing the state to accept the same." (Stats. 1913, p. 445; Henning's Gen. Laws, p. 994.)

Section 1 of that act reads as follows:

"Whenever it is determined by a four-fifths vote of the board of supervisors of any county that the interests of the county would be promoted thereby, the board of supervisors, upon the recommendation of the advisory board of the department of engineering of the state of California, may, by resolution passed by a four-fifths vote of said county board, determine to acquire by purchase, donation, or dedication, or lease any right of way, rock quarry or land needed for state highway purposes and described in such recommendation, and shall proceed, if necessary, to condemn under

the provisions of the Code of Civil Procedure relating to such proceedings any right of way, rock quarry or land recommended to be acquired as aforesaid. The title to such property may be taken in the name of the state or the county. The order of the board of supervisors shall be the only preliminary procedure required prior to the acquisition of such property or the commencement of such condemnation action or actions.''

Section 2 provides a similar procedure under which a county whose interests would be promoted thereby is authorized to contribute money toward the expenses of construction of state highways within their limits.

The present action was brought under and in accordance with the above mentioned statute of 1913. It was preceded by the recommendation of the California Highway Commission, which is the successor of the advisory board of the department of engineering. It is not claimed that there has been any failure to conform with the procedure required by the terms of said statute. While there has been no direct repeal of the statute of 1913, it is contended by appellants that there is an implied repeal of said statute by reason of an amendment to the constitution of the state, which amendment was accomplished by the adoption of section 2 of article XVI of the constitution, on the first day of July, 1919. At this point it will be useful to have in mind some of the legal history connected with the development of the present system of state highways.

''The provisions of law relating to the powers and duties of the Highway Commission are to be found in various places. The first 'State Highway Act' was adopted in 1909 (Stats. 1909, p. 647) and amended in 1915 (Stats. 1915, p. 686). The second 'State Highways Act' was adopted in 1915 (Stats. 1915, p. 650), and it, among other things, adopted by reference various provisions of the first State Highways Act. The third state highways measure was adopted in 1919 and 1920 in the form of amendments to the Constitution (Const., art. XVI, secs. 2, 3), and it, in turn, adopted by specific reference certain provisions of the State Highways Act of 1915, and by general reference various other provisions thereof. . . . Section 363f of the Political Code, adopted in 1921, created the present California Highway Commission, as the successor to the duties, powers, pur-

poses, responsibilities, and jurisdiction theretofore vested in the appointed members of the advisory board to the department of engineering, who formerly composed a subdivision of the department of engineering, designated as the California State Highway Commission. The statutory provisions prescribing the powers, duties, and responsibilities of the department of engineering are to be found in the Statutes of 1907, page 215; Statutes of 1909, page 558; Statutes of 1911, page 823; Statutes of 1915, pages 630 and 898, and Statutes of 1917, pages 541 and 690. By section 8 thereof it is provided that 'all public work done by the state, except as otherwise provided by law, shall be under the full control of said department.' By section 9 thereof it is provided that 'the department of engineering shall take and have full possession and control of all roads and highways which have been declared and adopted state roads and state highways, and all state roads and state highways which may hereafter be acquired and constructed.' " (*California Highway Com.* v. *Riley,* 192 Cal. 97, 103 [218 Pac. 579].)

The State Highways Act of 1915 was a statute approved May 20, 1915, and was designed to authorize the acquisition, construction, improvement, maintenance, and control of the uncompleted portions of the system of state highways prescribed and contemplated by the State Highways Act of 1909. The State Highways Act of 1915 provided for payments to be made by counties to the state treasury as compensation for interest paid upon moneys expended within such counties from the proceeds of the state bonds; and provided for additional state bonds to be issued and sold to create a fund for completing the acquisition of such highway system. (Stats. 1915, p. 650.)

Another aspect of the series of legislative acts now under consideration is indicated in the reply brief of appellants, where they say: "In 1909 the state approved an issue of bonds in the sum of eighteen million dollars for the construction of a system of highways. In 1915 an additional fifteen million dollars was authorized and expended. In 1919 a further bond issue of forty million dollars was authorized by the constitutional amendment under consideration."

Section 2 of article XVI of the constitution, adopted as hereinbefore stated, provided for the preparation and issu-

ance of the bonds thereby authorized, and created certain funds corresponding to those provided for in the state highways act of 1915. Said funds were described respectively as "third state highway fund"; "third state highway interest and sinking fund"; "third state highway revolving fund," and "third state highway sinking fund." It was directed that the moneys in said "third state highway fund" shall be used by the state department of engineering for the acquisition of rights of ways for and the acquisition, construction, and improvement of uncompleted portions of the system of state highways prescribed by the "state highways act" of 1909, and the "state highways act of 1915," and certain extensions thereof described in said last-named act, "and also for the acquisition of the rights of way for and the acquisition, construction and improvement of the following additional highways as state highways. . . . Oxnard to San Juan Capistrano. . . . Said additional highways to be located on the most direct and practical route."

After providing for certain expenditures of money for the previously planned but not completed highways, said section 2 provides: "The cost of acquisition and construction of the several extensions described in said 'state highways act of 1915,' shall hereafter be entirely borne by the state of California, it being the intention hereof to relieve the several counties from any further co-operation as contemplated by said 'state highways act of 1915'; but nothing herein shall prevent any county from contributing towards the cost of said extensions *or of any other state highways* at its option to such extent as it may desire *under the provisions of any existing laws.*"

Section 3 of article XVI of the constitution, adopted at the general election of November 2, 1920, creates a state highway finance board, and contains sundry regulations relating to the various described bond issues.

Appellants contend, first, that the demurrer to the complaint should have been sustained, upon the ground that the county was without authority to maintain the action; and that for the same reason the objections of defendants to the introduction of evidence should have been sustained. Counsel for appellants take the position that, under the act of 1913 to which we have referred, the power thereby conferred upon the board of supervisors was limited to those state highways which had been designated in previous acts of legislation,

and therefore did not include the highway between Oxnard and San Juan Capistrano, which was only authorized by the constitutional amendment of July 1, 1919. They say that it cannot be assumed that the legislature intended to bestow upon the board of supervisors authority to condemn land "for the purpose of a state highway which the state itself had not, at that time, power to construct." They further contend that, because the constitutional amendment empowers and directs the state itself to use funds provided thereby for the acquisition of the rights of way for this highway, and because the intention of the amendment was to relieve the counties from any further co-operation in respect to the described highways, it follows that any law which might prevent the state itself from acquiring such highways would be unconstitutional. They further say that since the statute of 1913, in its provisions relating to the condemnation of rights of way, only authorized the board of supervisors to "proceed, if necessary, to condemn" any right of way recommended, it follows that this action is unauthorized. Counsel say: "All necessity for the county to condemn land for this highway was entirely at an end upon the adoption of section 2 of article XVI of the Constitution. It was not necessary for the county to do so, because the state was obliged to do so and had made provision for the necessary funds and all of the means of carrying out the determination of the state of acquiring the land into execution."

Our own reading of these statutes and constitutional enactments leads us to a different conclusion. Said statute of 1913 is general in its terms. It does not require any special rules of interpretation to make its provisions applicable to a highway originating at a later date, as well as to such highways as had been provided for by the "State Highways Act" of 1909. It is not true that in 1913 "the state itself had not at that time power to construct" any highway for which the legislature had not yet provided. The power existed, although it had not yet been exercised. It was in recognition of such existing power and of its possibility of future exercise that said statute of 1913 was enacted in the terms there used. Moreover, the provisions of section 2 of article XVI of the constitution, which we have quoted, directly recognized the existence of the statute of 1913 when, after relieving the counties from the obligation

to co-operate in the acquisition and construction of these state highways, it was further provided that "nothing herein shall prevent any county from contributing towards the cost of said extensions or of any other state highways at its option to such extent as it may desire *under the provisions of any existing laws.*" Since the statute of 1913 contains the authorization under which such contributions were permitted to be made by the counties, it seems clear that the clause, "under the provisions of any existing laws," was intended to include said statute of 1913. ■ The claim of counsel for appellant that upon adoption of said section 2 of article XVI of the state constitution it was unnecessary for the county to condemn land for this highway, because the state was obliged to do so, is unsound. The state had a right to choose its agents for the accomplishment of its purpose to construct a system of highways. The statute of 1913 made the county, through its board of supervisors, under the conditions therein described, the agent of the state for the purpose of acquiring any right of way or land recommended to be acquired. It was particularly provided that the title to the property might be taken in the name of the state or of the county. The clause, "shall proceed if necessary to condemn," when read in the light of its context, seems to refer only to that necessity which would arise when, after determining to acquire the land, the board of supervisors found, in any given case, that the land could not be obtained by purchase, donation or dedication. ■ But it was not necessary for the plaintiff to allege or prove that these methods of acquisition other than condemnation had been attempted and had failed. For the statute says: "The order of the board of supervisors shall be the only preliminary procedure required prior to the acquisition of such property or the commencement of such condemnation action or actions." This provision was in accordance with the rule that, in the absence of contrary evidence, official duty is presumed to have been regularly performed.

■ This action was commenced by complaint filed on the 15th of January, 1924. The right of way sought to be taken is eighty feet in width, with an extra width at certain described places where such additional width is required in order to provide for cuts or fills. Prior to the commencement of this action, and prior to any proceedings

by the state looking to the construction of the state highway on account of which the present action was brought, the County of Los Angeles, by proceedings conducted under the general highway laws of the state, had condemned and taken, for public highway purposes, a strip of land forty feet in width with sufficient land along the sides thereof to provide for fills and other work. (*County of Los Angeles* v. *Rindge Co.*, 53 Cal. App. 166 [200 Pac. 27]; *Rindge Co.* v. *Los Angeles Co.*, 262 U. S. 700 [67 L. Ed. 1186, 43 Sup. Ct. Rep. 68]; *County of Los Angeles* v. *Rindge Co.*, 69 Cal. App. 72 [230 Pac. 468].) Said county highway commenced at the easterly boundary of the Malibu ranch (the property now owned by defendant Marblehead Land Company) at the point where that portion of the proposed state highway herein sought to be acquired and condemned begins, and followed a general westerly course through said ranch, ending at the Ventura County line at the westerly end of said ranch, at the point where the proposed state highway crosses said county line. Said county road in some places lies wholly, and in other places partly, within the right of way now sought to be condemned. At some places the county road parallels the right of way herein sought to be condemned, being but a short distance removed therefrom; while at other places the two rights of way are separated from each other by distances of "from one-half to three-quarters of a mile or more."

It is contended by appellants, and was pleaded by them as a defense to this action, that by reason of the prior establishment of said county highway, and the condemnation of a right of way therefor at the suit of the County of Los Angeles, said county is now estopped from seeking to take by condemnation the right of way described in the complaint. The argument presented in support of this contention rests principally upon the prior contention that said statute of 1913 was by necessary implication repealed by the adoption of section 2 of article XVI of the constitution. As we have concluded that there was no such repeal, this part of the argument need not be followed any further.

In the establishment of the county road, the purposes in view were comparatively limited in respect to territory to be served. The width of the road, and the particulars· of the route thereof, were determined with reference to those local conditions. The present proposed highway, on the

contrary, is to be part of a state highway system, through many counties and extending to great distances. The proceedings for obtaining the right of way through appellants' land were initiated by the state highway commission, and the board of supervisors of Los Angeles County is merely the agency through which the state has chosen to proceed in obtaining the right of way. It cannot be said that the county highway, and a state highway thus proposed to be established for more general purposes of the state than the county highway, and of much greater width than the county highway, should necessarily pass through this ranch along an identical route, even though the two roads do enter the ranch at the same point and leave it at the same point. Under these circumstances there is no conflict between the resolution of the board of supervisors, which, prior to the former action, declared that the route chosen for that highway was the route most compatible with the greatest public good and the least private injury, and the resolution of the same board, adopted at the request of the state highway commission, in which resolution the supervisors declared that in this case also the route proposed is the route most compatible with the greatest public good and the least private injury. Under the conditions which attended the former action, and having in view the purpose of the county highway, it might be that the route which would provide for the greatest public good and the least private injury in relation to that highway would be different from the route required by the greatest public good and least private injury in establishing the state highway. The statute of 1913 provided that, under the stated conditions described in that act, the county may proceed to condemn, under the provisions of the Code of Civil Procedure relating to such proceedings. Section 1241 of the Code of Civil Procedure declares that in such a proceeding for condemnation of property within the county, the adoption of the resolution or ordinance declaring that the property sought to be condemned is necessary for the proposed public improvement, and that the proposed improvement is planned or located in the manner which will be most compatible with the greatest public good and the least private injury, shall be conclusive evidence of those facts. Since, in our opinion, the estoppel which has been invoked by appellants is not applicable to the facts of the case, there remains no objection

sufficient to prevent the County of Los Angeles from condemning the property sought to be taken in this action.

Finding X reads as follows: "The court further finds that the market value of the property owned by the defendant Marblehead Land Company, herein sought to be condemned by the plaintiff for the purposes herein mentioned, was, on the 15th day of January, 1924, the sum of eighty-two thousand dollars ($82,000.00), and that the market value of all of the improvements thereon pertaining to said realty so owned by the said defendant, Marblehead Land Company, was, on the said 15th day of January, 1924, the sum of eight hundred dollars ($800.00)."

Appellants claim that this finding is without support in the evidence, either in relation to the market value of the land taken, or the market value of the improvements thereon owned by the Marblehead Land Company. The principal point urged in the attack upon this finding is that the valuation made by the court of the improvements "was reached by disregarding entirely the evidence which showed without contradiction or confliction that there was a valuable improvement on said land consisting of a railroad embankment of 93,000 cubic yards of dirt worth $49,660.00; that the court erred in refusing to award compensation to any of the appellants for said improvement and by its judgment confiscated the same without allowing the owner thereof any compensation for it whatever."

In the year 1903 the ranch owner conveyed to the Hueneme, Malibu and Port Los Angeles Railway Company an easement of 200 feet in width throughout the ranch immediately adjacent to the line of mean high tide. This company proceeded to construct over portions of the ranch a railroad, but in so doing did not follow the easement theretofore granted. Later on another railroad corporation was formed under the name of the Hueneme, Malibu and Southern Ry. Co., and the then owners of the ranch conveyed to this corporation a sixty-foot right of way, which followed a different course than the 200-foot easement and was so laid out as to cover the previous actual railroad construction.

In finding XIV the court found that "the market value of the improvements of all character owned by defendant Hueneme, Malibu and Port Los Angeles Railway, and herein sought to be condemned, was, on the 15th day of January,

1924, the sum of $1,000.00." The court awarded this $1,000 to the last-named company, and included in its award to the Marblehead Land Company the $800 fixed as the value of improvements on the realty owned by it, in accordance with finding X. The error claimed by appellant on this part of the case is that the court did not adopt the valuation of $49,660 which, according to the testimony of the witness Hawgood, was the amount which a person desiring to obtain a railroad grade on the stated premises and at the above stated date would have been willing to pay for the railroad grade or roadbed which was on those premises, "or a similar graded roadbed." Appellants claim that Hawgood's testimony on this point stands uncontradicted. We find, however, that there is in the record abundant evidence that the railroad, including the grades and fills, as well as the rails and ties, had been washed out in some places, and had fallen into a neglected condition, and had so remained for a number of years prior to the year 1924. There is testimony which conflicts definitely with that of Mr. Hawgood. An example of this occurs in the testimony of J. A. Bell, who, like Mr. Hawgood, qualified as an engineer of experience in railroad construction. After an extended statement of facts in support of his opinion that the right of way itself was very unsuitable for a railroad, Mr. Bell said: "Basing my answer upon that which I have heretofore testified to, and my knowledge of conditions both on the ranch and elsewhere, not only the physical conditions but also the conditions I have mentioned, I can't see any conceivable use for it as a railroad right of way." Other witnesses declared that the railroad had washed away in some places, and that some of the trestles and bridges had all dropped to pieces; that there was practically no railroad that could be used for any purpose whatsoever. The witness Benedict, who was one of those who gave the railroad right of way a nominal valuation of one dollar, said: "I think I saw all of the mileage on the entire route that was graded but the bulk of it throughout the entire ranch was in a condition where it was of no value even though it had been useful to the grade of the highway and I gave it no value." After an extended examination of the testimony we think that, notwithstanding Mr. Hawgood's valuation of the grade and materials of the railroad structure, the testimony

of these other witnesses is inconsistent with that valuation, and that the finding of the court which established the value of the railroad embankment and structures at the sum of $1,000 is adequately supported by the evidence.

Appellants next contend that there is no evidence to sustain that portion of finding XI which limits to the sum of $8,666, the damage caused to that portion of the ranch not sought to be condemned, by reason of the severance thereof from the portion sought to be condemned; and that there is no evidence to sustain that portion of the same finding whereby it was determined that the benefits to that portion of the ranch not included in the condemnation amounted to the sum of $8,666. Appellants further contend that the benefits so set off against severance damages were only of a general nature, and were not of that class of special benefits which may lawfully be set off against severance damages.

Examination of the testimony shows that several witnesses, who were apparently competent and well informed, were of the opinion that the severance damage amounted to sums which were less than the amount subsequently established by the findings of the court. These witnesses were quite uniform in their opinion that the benefits to the portion of the ranch not taken, by reason of the construction of improvements, were many times as much as the amount stated in the findings of the court. We think that the evidence is sufficient to sustain these findings. It follows that on this branch of the case appellants have no ground of complaint, unless it be made to appear that said benefits were only a part of the general benefits and advantages accruing to the community, and were not benefits special and peculiar to the property of defendants not included in the condemnation. Numerous authorities on the subject were cited in the briefs and in the oral argument. The law in this state covering the question here presented is definitely stated in *Beveridge* v. *Lewis,* 137 Cal. 619 [92 Am. St. Rep. 188, 59 L. R. A. 581, 67 Pac. 1040, 70 Pac. 1083]. It was there pointed out that general benefits consist in an increase in the value of land, common to the community generally, and resulting from advantages which will accrue to the community from the improvement. Special benefits, on the other hand, are such as result from the mere con-

struction of the improvement, and are peculiar to the land in question. These special benefits must be such as are reasonably certain to result from the construction of the work. So far as we are advised, the rule or principle thus announced in *Beveridge* v. *Lewis* has not been modified by later decisions.

■ The witnesses who testified in favor of the plaintiff on this question were of the opinion that, in addition to the general benefits, there were special benefits which would result from the construction of this highway, and that these benefits were peculiar to the property of defendants. The witness Butterworth, after stating that the market value of the land taken would be greatly increased by the laying out and construction of the highway, stated that he had in mind both the benefit that would result from access and transportation facilities, and also the benefit to the frontage upon the highway and added value that would accrue to land fronting thereon if the highway was put through. He further stated that these benefits to the ranch, and this increase in market value as a result of the construction of the highway, were in his mind separate and apart from the general benefit which the entire district would receive. The testimony of the witness Benedict, and of others, is of like effect. It is not denied by appellants that under the provisions of article I, section 14, of the constitution of the state of California, benefits which are special and peculiar to the property affected may be set off against damages to the portion not taken, whenever the plaintiff is a municipal corporation or a county.

■ Finally, appellants have submitted for consideration numerous assignments of error in rulings upon evidence. It is claimed that the court erred in permitting the plaintiff to introduce evidence which was incompetent, irrelevant, and immaterial, and which was hearsay; and in refusing to permit defendants to introduce competent, relevant, and material evidence; and in permitting improper cross-examination of appellants' witnesses. Practically all of these rulings were concerned with testimony of witnesses who were giving their opinions upon questions directed to the subject of market value of the property sought to be taken, or the question of damages to the property not taken.

We have made a schedule of the pages of the transcript, referred to in the brief of counsel for appellants in their argument upon these assignments of error, and have read not only the particular folios indicated, but very much of the connecting portions of the record. Let it be assumed, without deciding the questions point by point, that there were occasional errors in these rulings. As a whole, the court was liberal in the admission of evidence offered by the defendants for the purpose of establishing their claims as to the market value of the property. The few rulings made against defendants in this respect were comparatively unimportant, and did not interfere with a full and complete presentation of the facts relied upon by appellants to establish the values claimed by them. A like liberty was allowed to the plaintiff in its reply, not only in the presentation of its own evidence, but in its cross-examination of the witnesses introduced by the defendants. It does not appear that the court lost sight of the correct rules governing the standards of value which enter into a determination of the issues upon which the court was called upon to make its findings. We have reached the conclusion that such errors as may have occurred did not perceptibly interfere with the judgment of the court, or affect the result shown by the findings and judgment. In this connection, although it may be of minor importance, we take note of the fact that the judge had not only the benefit of the testimony of the witnesses, but that he made a personal examination of the property. If this examination was made under any definite stipulation contained in the record, such stipulation has not been brought to our attention. We do find, however, a statement by one of counsel for appellants, in the course of an argument to the court, and in which he said: "I have in mind that Your Honor has been out there and has been over the property and that Your Honor's view of the property is evidence in the case."

We have formed the opinion that the findings of the court upon the questions relating to compensation and damages are sustained by the evidence. They were made after a very fair and complete presentation of the case at a trial which evidently occupied the attention of the court for many days. We have endeavored to state the contentions of appellants upon the principal questions of law in the case, with our

conclusions thereon, and we find no reason which would justify a reversal of the judgment.

The judgment is affirmed.

York, J., concurred.

Houser, J., deeming himself disqualified, did not participate.

A petition for a rehearing of this cause was denied by the district court of appeal on January 16, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1929.

All the Justices concurred.