[Civ. No. 5952. Third Appellate District.—February 24, 1939.]

THE PEOPLE, Appellant, v. DONALD C. McREYNOLDS et al., Respondents.

Clarence W. Morris, Holloway Jones, Clifford D. Good, Lincoln V. Johnson and George C. Hadley for Appellant.

Carter, Barrett, Finley & Carlton for Respondents.

THOMPSON, J.—The defendants own 245 acres of farm land one mile north of Redding in Shasta County, through which, for many years, the state highway extended. For the

purpose of straightening the highway through defendants' property the state condemned a strip of land near the old highway 235 feet in width and 750 feet in length, containing 8.46 acres of land. A jury awarded the defendants damages for the property taken in the sum of $2,500 and severance damages in the additional sum of $2,500. A judgment was rendered against plaintiff for the sum of $5,000. From that judgment the state has appealed.

It is asserted the court erred in refusing to instruct the jury to deduct from the severance damages awarded the value of special benefits acquired by the defendants on account of the change in the course of the highway; that the court erred in unduly restricting the cross-examination of one of the defendants; that the court erred in precluding a witness for plaintiff from testifying to the damages on the ground that he was not qualified to do so, and that the damages which were awarded are excessive.

■ We are of the opinion the court did not err in refusing to instruct the jury it was entitled to deduct from the severance damages awarded the value of special benefits derived by the defendants on account of the change in the location of the highway. There is no substantial evidence the remaining land of the defendants derived any special benefits from the change in the course of the highway different in character from the general benefits secured by the public at large. The plaintiff's witness, Harper, testified there were no benefits accruing to the defendants' property on account of the improvements. Only one witness testified that defendants' land would be benefited by the change in the locality of the highway. That was a man by the name of Oaks, who, in effect, said that the property would be thereby benefited to the extent of approximately $1,000 "by reason of the fact that the heavy travel was taken off this old road. . . . There might be occasional prospects for a cheap cabin site". This evidence infers that diverting the traffic from the old road to the new highway located a short distance southerly therefrom might enhance the value of the remaining land of defendants as possible sites for "cheap cabins". He said that heavy traffic along the old road would render the adjacent lots undesirable because "it would be unsafe" if the owners "had any children they might get out into the road and be run over". He added the statement that the new

route "will make it possible to sell off a few of those little spots in there. . . . A cabin site [might be worth] fifty dollars."

The court refused to instruct the jury that it should deduct from the severance damages awarded the value of the benefits accruing to the defendants' property by virtue of "the construction of the highway".

The foregoing evidence with respect to benefits derived is too remote, uncertain and speculative to furnish substantial proof warranting the court in directing the jury to reduce the severance damages by the value of benefits accruing to the remaining property on account of the change in the locality of the highway. It will be observed the new course of the highway does not divert traffic from the property of the defendants. It merely changes the line of travel from the old highway to the new one located a few hundred feet southerly therefrom. If the enhanced value of lots adjacent to the old road is based on the danger of children or cattle straying upon a busy thoroughfare, the change in the course of the highway merely results in their having to stray a short distance further to encounter that same danger. The defendants' land is located a mile from Redding. There is no evidence that it has been subdivided into building lots, or that there is any reasonable likelihood it will be so subdivided with a prospect of selling the lots even for "cheap cabins". The evidence of benefits to the land not taken, by virtue of the change in the highway, is unsubstantial, remote and speculative. It did not justify the court in directing the jury to take it into account in estimating the severance damages. (*Coast Counties Gas & Elec. Co.* v. *Miller & Lux Inc.*, 118 Cal. App. 140 [5 Pac. (2d) 34].) The court, therefore, did not err in refusing to so instruct the jury.

It is true that the state would be entitled to have the award of severance damages assessed against it diminished in the amount of any proved special benefits which accrued to the defendants' land which was not condemned. Article I, section 14, of the California Constitution, as amended in 1928, provides in part:

"Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner, and no right of way shall be appropriated to the use of any corporation, except a muni-

cipal corporation or a county or the state until full compensation therefor be first made in money or ascertained and paid into court for the owner, irrespective of any benefits from any improvement proposed by such corporation.''

It clearly appears from the preceding provision that an ordinary corporation may not appropriate a right of way without first compensating the owner therefor *irrespective of any benefits to be derived from the improvement.* But municipal corporations, counties and the state are specifically excepted from that rule. It is clearly inferred that when a right of way is condemned by a municipal corporation, a county or the state, such appropriators are entitled to have the severance damages which are awarded against them reduced in the amount of the benefits which accrue to the property not taken on account of the proposed improvements. However, such benefits must be special in character as distinguished from general benefits enjoyed by the public at large. (*Beveridge* v. *Lewis,* 137 Cal. 619 [67 Pac. 1040, 70 Pac. 1083, 92 Am. St. Rep. 188, 59 L. R. A. 581]; *Collier* v. *Merced Irr. Dist.,* 213 Cal. 554, 571 [2 Pac. (2d) 790]; *Los Angeles* v. *Marblehead Land Co.,* 95 Cal. App. 602, 614 [273 Pac. 131]; sec. 1248, Code Civ. Proc.; 10 Cal. Jur. 348, sec. 62.) Special benefits are defined in the Marblehead Land Company case, *supra,* as those which ''result from the mere construction of the improvement, and are peculiar to the land in question. These special benefits must be such as are reasonably certain to result from the construction of the work''.

In the present case there is no substantial proof of benefits to the defendants' land different in nature from those which would result to the public in general. We can reasonably conceive of no special benefits to the defendants' land by the slight change in the location of the highway, except, possibly, the running of a straight course through the property instead of a former more irregular one. There is no evidence of the value of such benefits. Nor can it be said the defendants' property is benefited by their acquiring the use of the former abandoned roadway. There was no evidence of the abandoning of the former highway. Even if it were to be abandoned, we assume the title thereto would not revert to the former owner thereof, but it would still remain in the state. We are directed to no tangible evi-

dence of the value of special benefits accruing to the land of the defendants by virtue of the construction of the new highway.

It is true that in estimating the damages suffered or the benefits derived on account of the appropriation of land for public use, evidence of its reasonable adaptability for a particular purpose, even though it is not then actually used therefor, is competent. (*Los Angeles* v. *Kreckhoff-Cuzner Mill & Lumber Co.*, 15 Cal. App. 676 [115 Pac. 654].) Under proper circumstances it is competent to show that land which is used exclusively for farming purposes has a market value based on the expectation of subdividing it into town lots or small building tracts. (20 C. J. 774, sec. 229.) The uses to which the property may be adapted must, however, be so reasonably probable as to have an effect upon the present market value of the land. A purely imaginary, remote or speculative value may not be considered. (10 R. C. L. 130, sec. 113.) There must be some probability that the land would be used for subdivision purposes within a reasonable time. (20 C. J. 773, sec. 228.) There is no evidence in the present case that the defendants intended to so subdivide the property, or that they could, within a reasonable time, sell it for building purposes even for "cheap cabin sites". We are therefore of the opinion the appellant was not prejudiced by the refusal to instruct the jury to take such evidence of a speculative value into consideration in determining the severance damages which were allowed.

It does not appear that the court unduly restricted the examination of the defendant, Frank McReynolds, who was called under the provisions of section 2055 of the Code of Civil Procedure and cross-examined by the plaintiff. In fact, he was examined at considerable length. The rulings of the court with respect to his evidence appear to be entirely fair and impartial. He was permitted to testify that he purchased his 245-acre tract of land from the Southern Pacific Company in 1934 for $1228.37. He was then asked if he had not sold four acres of that tract to one Eitemiller that same year for $400. That was objected to by adverse counsel, and plaintiff's attorney withdrew the question. He said, "Well, your Honor, I withdraw the question at this time." While there was considerable controversy over that subject, we are unable to find that the question was subse-

quently renewed. There was much opposition on the part of defendants' counsel to questions regarding a sworn amendment to the answer which was filed. The rulings of the court were favorable to the appellant. The witness admitted that in his first answer he swore that the value of the property sought to be condemned was $500 an acre and the severance damages would amount to $7,500. He also admitted that he swore to an amended answer in which he alleged that the value of the 8.46-acre strip of land sought to be condemned was $1,000 an acre, and that the severance damages amounted to $12,000. He explained that increased demand for damages by saying: "I think that property has gone up a good deal since we first filed." We are of the opinion the motion to strike that answer from the record was properly denied. The latitude permitted in the cross-examination of a witness is largely within the sound discretion of the trial judge. (3 Am. Jur. 536, sec. 976.) In the authority last cited it is said in that regard:

"The scope and extent of cross-examination rest largely in the sound discretion of the trial court, and its ruling thereon is reviewable only where such discretion has been abused."

The court did not abuse its discretion by unduly restricting the cross-examination of the defendant, Frank McReynolds.

The court did not err in holding that the plaintiff's witness, Gover, was disqualified to testify as to the value of defendants' land sought to be condemned. It appears he is a farmer who lives in the southern portion of the county of Shasta some distance from the property owned by the defendants. He owned several large tracts of land in other parts of the county. He admitted that he did not know of sales of land similar to that of the defendants in the vicinity of Redding, within one mile of which their land was located. He had never visited their premises until a few days before he was called as a witness. The determination of the qualifications of a witness to testify concerning the value of land sought to be condemned for public use is addressed solely to the trial judge, and is largely subject to his sound discretion. In the absence of a clear abuse of that discretion the determination of the trial judge that such a witness is or is

not qualified to testify to the value of the land sought to be appropriated will not be disturbed on appeal. (*Vallejo & Northern R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 575 [147 Pac. 238, 252].) In that case it is said:

"The question whether or not a witness is qualified to give his opinion, as evidence upon a matter in issue, is submitted to the trial judge in the first instance, and is to be determined by him before such opinion may be given. (*Fairbank* v. *Hughson,* 58 Cal. 314.) It is, in itself, in the nature of a trial of a question of fact, by evidence addressed to the judge alone, and, as in other decisions or questions of fact by a trial court, his ruling thereon is a matter of discretion and will not be overturned on appeal unless there was an actual want of evidence to support it or a clear abuse of discretion in ruling upon the evidence given on the subject."

The value of land appropriated by eminent domain is essentially a question of opinion to be established by expert testimony. It is not sufficient that a real estate agent or a farmer may have general knowledge of real estate values. He must be familiar with the market price of similar land in the same neighborhood and he should be acquainted with the property involved in the suit. He should possess special knowledge regarding the particular land in question which will enable him to form an intelligent and fairly accurate estimate of the actual market value of the land sought to be condemned. It will not be presumed that a farmer who owns similar land in another portion of the county remote from the property in question is, therefore, qualified to give his expert opinion of its value. His qualifications must first be established. (18 Am. Jur. 999, secs. 355, 356.)

In the present case the court did not abuse its discretion in holding that the witness, Gover, was not qualified to give his opinion as to the market value of defendants' land sought to be condemned. Two other witnesses for the plaintiff testified fully regarding the value of the land.

We are unable to say as a matter of law that the judgment based on the verdict of the jury, that the value of the 8.46 acres of land appropriated by the state for highway purposes at slightly less than $300 an acre, aggregating the sum of $2,500, is so grossly excessive as to infer that it was

the result of passion and prejudice. It is true that the trial judge said:

"The jury gave a far more liberal award in this case than the court would have done had it been sitting without a jury."

The defendants called five expert witnesses who were engaged in the real estate business at Redding, one mile from the property in question, each of whom fixed the market value of the property taken at a figure in excess of $500 an acre. Some of their reasons for declaring that valuation may not appear to be sound or controlling. But it was competent evidence which the jury had a right to consider. The weight of their evidence was solely for the determination of the jury. (*Dunphy* v. *Dunphy*, 161 Cal. 380 [119 Pac. 512, Ann. Cas. 1913B, 1230, 38 L. R. A. (N. S.) 818]; *Bennett* v. *Hardy*, 108 Cal. App. 473, 479 [291 Pac. 903].) An appellate court may not assume that an award of damages for the taking of property in eminent domain which is supported by competent testimony is excessive unless it clearly appears that it was rendered through passion or prejudice. (*May* v. *Farrell*, 94 Cal. App. 703, 715 [271 Pac. 789].) It is true that expert opinions of witnesses often appear to be influenced by partisanship, and that they are subject to inherent infirmities which justify a more critical examination of their effect. But the nature of certain cases requires that necessary facts, such as the value of land sought to be appropriated, shall be established by expert testimony. Such evidence, therefore, has a probative value and may be considered by the jury. Its weight depends on the reasons assigned for the conclusions of the witnesses in the light of the surrounding circumstances. Unless it appears that the opinions are inherently wrong, or lack substantial support, they should be received and considered by the jury for what they appear to be worth. (2 Jones on Evidence, 4th ed., p. 739, sec. 392.)

It is true that the defendants purchased their 245-acre tract of land in 1934 for $1228.37, and that they sold four acres of that property to Eitemiller the same year for $100 an acre. But there is evidence that the 8.46 acres involved in this suit is more valuable than other portions of the tract. It also appears the value of land in and about Redding has increased greatly in value since 1934 on account of the construction of the Shasta Dam. There is substantial evidence

to support the award of damages for the value of the land appropriated.

The judgment is therefore affirmed.

Tuttle, J., and Pullen, P. J., concurred.