[Civ. No. 19201.   First Dist., Div. One.   Dec. 14, 1960.]

HAYWARD UNION HIGH SCHOOL DISTRICT, Respondent, v. ADELAIDE C. LEMOS et al., Defendants; ALFRED J. HERNANDEZ et al., Appellants.

Robert C. Burnstein, Marvin B. Starr and Carl M. Selinger for Appellants.

J. F. Coakley, District Attorney, R. Robert Hunter, Chief Assistant District Attorney, and James E. Jefferis, Deputy District Attorney, for Respondent.

BRAY, P. J.—Defendants Alfred J. Hernandez and Adeline Hernandez appeal from a judgment in condemnation.

## QUESTIONS PRESENTED

Alleged error (a) in excluding testimony concerning uses of comparable property; (b) in refusing to strike testimony

of a witness allegedly using improper methods of determining market value.

RECORD

Plaintiff high school district sought to condemn certain properties including property of said defendants. The sole issue was the fair market value of the subject property on July 24, 1958. The property then was used as a single family residence, located within the area of highest density multiple family zoning in the city of Hayward. Defendants' witnesses testified that the fair market value was $40,000, $39,000, and $41,750. Plaintiff's witnesses testified that it was $22,000 and $21,250. The jury rendered a verdict for $22,500. The court denied a motion for new trial.

(a) *Uses of property of comparable value.*

The subject property is zoned for apartment house development. Plaintiff's witnesses testified that its highest and best use was for a single family residence; defendants' that it was for an apartment house development. Mr. George Page, one of defendants' witnesses, an appraiser, testified that the highest and best use of the subject property was for a multiple dwelling, a 12-unit apartment house additional to the present house. He was then asked to discuss uses of comparable property. Plaintiff's counsel asked for "Dates of use." "THE COURT: Limit it to conditions prior to July 24, or not later than July 24, 1958.[1] . . . Anything since then, we don't want." The witness then started to discuss a certain property (later shown to have been developed some 15 years prior). Counsel for plaintiff interrupted, saying, "I thought the dates would be mentioned at the outset—we don't want anything past July, 1958." Then the only remark or objection (if it was an objection) made by counsel for defendants at any time concerning the time limitation was, "You don't put these cases in a vacuum——" The court again stated that the testimony would have to be confined to conditions that existed on July 24, "because nobody could see anything that was not there at that time." The witness then discussed a number of multiple dwelling properties. In the course of his testimony he stated that he was eliminating "quite a few" as being constructed after July 24.

Defendants' position is that the ruling resulted in excluding testimony of Mr. Page as to a substantial number of com-

---

[1]The date of issuance of summons. Section 1249, Code of Civil Procedure, provides that compensation for the taking of property shall be determined as of the date of issuance of summons.

parable uses after July 24 upon which he relied in reaching his opinion.

The question of whether or not a witness in a condemnation case in arriving at an opinion as to the market value of subject property may consider and testify concerning comparable property whose uses were not in existence on the date fixed by law for valuation of the subject property has not been determined heretofore in California. In *County of Los Angeles* v. *Hoe* (1955), 138 Cal.App.2d 74 [291 P.2d 98], a witness testified that in forming his opinion of the value of the property in question he relied on a *sale* of comparable property occurring seven months after the valuation date. The reviewing court held that there was no error in the denial by the trial court of a motion to strike the testimony concerning this sale, saying, "There is no fixed formula determining when proffered evidence is not pertinent to the question of value by reason of the time element. The question must be decided upon consideration of all the circumstances of the particular case. 'No general rules can be laid down as to the degree of similarity required to exist between the properties, and as to the nearness in respect of time and distance, since these are matters resting largely in the discretion of the trial judge.' (32 C.J.S., Evidence, § 593, p. 447.) The time element goes merely to the weight of the opinion." (P. 80.)

■ We see no reason why the above rule permitting[2] consideration of *sales* after the valuation date should not apply to consideration of *uses* of comparable property in determining the highest and best use of the property, for its bearing on the market value of the property. The pattern of use before and at the valuation date has been used as assistance in determining the market value of the subject property. See *City of Menlo Park* v. *Artino,* 151 Cal.App.2d 261 [311 P.2d 135] (use of comparable property for retail commercial purposes); *City of Los Angeles* v. *Hughes,* 202 Cal. 731 [262 P. 737] (use of comparable property for subdivision purposes). In *City of Menlo Park* it was held that where land was not presently available for a particular use by reason of a zoning ordinance or other restriction imposed by law, evidence was admissible to show a reasonable probability of a change of the zoning ordinance or restriction in the near

---

[2]The amendment to section 1845.5, Code of Civil Procedure, permitting a witness on direct examination to testify to the character of the existing uses being made of properties in the general vicinity was not in effect at the time of the trial.

future, where the probability of such change might affect the present market value of the subject property. By analogy, where, as here, there was testimony that there would be no demand in the near future for multiple family dwelling property, it would be proper to show by use of comparable property in the near future that probability of such demand affected the market value of the subject property on the valuation date.

The difficulty in our case is that, there having been no offer of proof, it is impossible to tell whether the subsequent use to be discussed by the witness was on comparable property. Plaintiff's witnesses conceded that there were a large number of multiple family dwellings in the area, and a demand for more, but that such were only on level land and not on so-called hill land, defendants' property being hilly. It appears that of the multiple family buildings which defendants' witness stated were in the area, only one building of 14 units out of a total of 403 units was on hilly land. Obviously, the court could properly have limited testimony concerning subsequent uses to property on hilly land, and could not be held to have abused its discretion in doing so. The court took the position that no evidence whatsoever of subsequent uses was admissible; hence it did not exercise its discretion.

▮ While the court's determination of the applicable law was erroneous, we cannot find that its application here was prejudicial for the reason, as above set forth, the records fails to disclose that the properties as to the later uses of which the witness might have testified, were hill properties. Again, defendants' counsel seemed to acquiesce in the ruling. He made no objection, nor did he give the court any indication of what the witness would testify. Moreover, the inclusion of evidence of subsequent use on comparable properties of multiple dwelling units would have been primarily cumulative. The witness testified to the existing development of 403 "multiple dwelling units" in the area, giving considerable detail as to the number of units in many locations. That Mr. Page believed that the highest and best use of the subject property was for multiple dwelling units and that there were a large number of properties so developed in the area were clearly demonstrated by him. Defendants introduced photographs of a number of multiple family buildings in the area. Two of their witnesses used drawings to show on the subject property the feasibility of building an apartment house.

(b)  *Refusal to strike testimony.*

Hugh T. Owens, an appraiser called by plaintiff, testified

that in his opinion the fair market value of the subject property was $22,000. On cross-examination he testified that he placed a value of $5,000 on the land and the balance on the improvements, and that he placed a value of $3,500 on the lot on which the house is located, and of $1,500 on the rear portion of the property. On redirect examination he stated that he used this method as a check against other figures that he had. He then testified that the land valuation was arrived at by adding the value of the rear end of the lot to the front end. Defendants then moved to strike all of his testimony on the ground that he had used an improper basis for determining market value.

The portion of Mr. Owens' testimony above mentioned was merely a segment of a lengthy examination. He also testified that he compared the subject property with sales of other comparable properties. He also testified to various cost factors he had examined based on data furnished him by a contractor. Taking his testimony as a whole, it is clear that he was giving his opinion as to the fair market value of the property as a whole. There is no reason why an appraiser, in determining the value of a piece of property, may not in arriving at its market value as a whole determine that certain portions of it are worth less than other portions. Frequently an appraiser in order to arrive at the fair market value of property will place a front foot value on the front of it and a square foot value on the less valuable rear portion or will place a larger square foot value on certain portions as against other portions. There was no violation of the general rule that "the market value is to be determined by considering the property as a whole . . ." (*El Monte School Dist.* v. *Wilkins* (1960), 177 Cal.App.2d 47, 54-55 [1 Cal.Rptr. 715].)

Mr. Owens testified that in his opinion the highest and best use of the property was for a single family dwelling, as the property was not suitable for multiple family uses. He claimed that the topography of the land was not suitable for the latter and pointed out that defendant Hernandez had evidently intended that it be used only as a single family lot; "Otherwise, he would not have built across the full width of the lot. . . . He probably wanted a deep lot, and that is what he has. A lot of people want deep lots."

The witness then went on to describe the steepness of the lot, the inability of getting into the rear portion of the lot, and other reasons for his conclusion that the property's highest and best use was for a single family dwelling. As claimed

by defendants, how Hernandez intended to use it was not important. It was a question as to what its best use would be for market purposes. The question which was objected to was a proper question—on what did the witness base his classification of the property as a single family lot? The answer as to what Hernandez planned may have been improper. But no motion to strike the statement or a similar later statement was made. However, taking Mr. Owens' testimony as a whole, it is clear that his statement as to Hernandez' intention was merely incidental to the fact that the property had a dwelling house on it which he claimed prevented the property from now being used for a multiple family dwelling. Also it is clear from his testimony as to the factual data concerning the slope of the lot and its grade and the lack of demand for multiple family dwellings, that it was Mr. Owens' opinion that even with the dwelling house off, the property's highest and best use for market value purposes was for a single family dwelling only.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied January 11, 1961, and appellants' petition for a hearing by the Supreme Court was denied February 8, 1961.