[L. A. No. 27013.   In Bank.   March 14, 1963.]

LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Plaintiff and Respondent, v. BILLY R. McNULTY et al., Defendants and Appellants.

Francis H. O'Neill and Richard L. Huxtable for Defendants and Appellants.

Harold W. Kennedy, County Counsel, and David Bernard, Deputy County Counsel, for Plaintiff and Respondent.

GIBSON, C. J.—Defendants in an eminent domain action appeal from a judgment on a jury verdict awarding them $12,900 for the taking of 2.62 acres by plaintiff district for the purpose of constructing a flood control channel. An additional sum of $5,000 awarded as severance damages was set off against an equal amount in special benefits found to accrue as a result of improvements made by the district.

Defendants owned 38.85 acres in the City of Santa Fe Springs which were zoned for industrial use but had not been developed for that purpose. The flood control channel, which was constructed prior to the trial under an immediate possession order, divides the land in such a manner that 7.31 acres are on the northeast side of the channel and 28.92 acres on the southwest side. It is 1,500 feet long and, including marginal areas, 72 feet wide.

The premises, including the improvements, were viewed by the jury.

Defendants' property and other land in the area had been drained by a natural watercourse prior to the construction of the channel by the district. In times of heavy rainfall 13 acres of defendants' land had been flooded, and there was a flood hazard to more than 6 additional acres. There was expert testimony that, in order to develop defendants' property to the highest and best use, it would be necessary to construct a drainage facility and that to obtain sufficient drainage a ditch 70 feet wide at the top and 4 feet deep, which would accommodate 450 cubic feet of water per second, would be required. Such a ditch would occupy approximately 2.55 acres of the 2.62 acres taken by the district. The construction of the channel by the district made it unnecessary for defendants to provide a ditch.

The district's evaluation witness stated that the land taken by the district in excess of that which defendants would have been required to use for a ditch was worth $20,000 per acre and that the land which defendants would have been required to use for a ditch was worth only $250 per acre. He testified that, since a ditch sufficient to drain defendants' land would require 2.55 acres, the $250-per-acre rate was applicable to 2.55 of the 2.62 acres taken by the district and the $20,000 rate was applicable to the remaining 0.07 acre and that the value of the land taken was $2,050.

■ Defendants offered to show by the testimony of an engineer that they could have provided adequate drainage by utilizing 0.9 acre less than the 2.55 acres which the district's witness testified would have been required. The testimony was rejected by the court on the ground that the witness did not have sufficient factual knowledge to give an informed opinion as to the dimensions of an adequate drainage ditch. The purpose of the testimony was to rebut the evidence that a ditch 70 feet in width, accommodating 450 cubic feet of water per second, would have been necessary to develop defendants' property if the flood control channel had not been built. Defendants' offer was to the effect that the witness would testify that he had designed a ditch of lesser width which would accommodate an equivalent quantity of water. The witness stated, however, that the area of a ditch sufficient to accommodate 450 cubic feet of water per second is determined by dividing that quantity by the velocity of the water and that he had "assumed" a velocity of approximately 3 feet per second. He admitted that velocity in his proposed ditch would be affected by downstream conditions and that he had no knowledge of such conditions and had not taken them into account in designing his ditch.

The opinion of defendants' witness depended upon a velocity of 3 feet per second which he had assumed, and, according to his statement, validity of this assumption would be affected by the downstream conditions of which he had no knowledge. Defendants did not offer to show that a velocity of 3 feet per second could be obtained in the channel designed by their witness, and, in the absence of such a showing, his testimony would be entitled to little, if any, weight. It may be noted that the district's witness who stated that a 70-foot ditch was necessary had made an extensive investigation of downstream conditions. In the circumstances it does not appear that the rejection of the rebuttal evidence constituted prejudicial error.

■ The court instructed the jury that in determining the market value of the parcel condemned it is not proper to attribute a per-square-foot value to defendants' entire property and then apply the value to the parcel condemned unless each square foot of defendants' land has the same value and that, if the parcel condemned is different in quality from the rest of the land, it should be assigned a different value. There was a conflict in the evidence as to whether 2.55 acres of the 2.62 acres taken were worth as much per acre as the remainder

of defendants' land, and the instruction correctly states the applicable principles of law. (*People* ex rel. *Dept. of Public Works* v. *Neider*, 195 Cal.App.2d 582, 590 [16 Cal.Rptr. 58]; *Hayward Union High Sch. Dist.* v. *Lemos*, 187 Cal.App.2d 348, 353 [9 Cal.Rptr. 750]; *People* v. *Loop*, 127 Cal.App.2d 786, 796-800 [274 P.2d 885]; 4 Nichols on Eminent Domain (3d rev. ed. 1962) § 14,231, p. 545.)

Defendant Kline was required over objection to testify on cross-examination to the price ($8,160 per acre) he paid for the land in 1956, approximately four years before the condemnation. ▆▆ It is settled that evidence of other sales of the identical real property is admissible and that matters such as a change of value between the time of the sale and the time of the condemnation ordinarily go merely to the weight of the evidence and do not compel exclusion. (*Eatwell* v. *Beck*, 41 Cal.2d 128, 134 [257 P.2d 643]; *Royer* v. *Carter*, 37 Cal.2d 544, 548 [233 P.2d 539]; *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744, 755-759 [192 P.2d 935]; *Harold* v. *Pugh*, 174 Cal. App.2d 603, 609 [345 P.2d 112]; *People* v. *Vinson*, 99 Cal. App.2d 100, 102, [221 P.2d 161]; *Simmonds* v. *United States*, 199 F.2d 305, 307-308.) It may be noted in this connection that defendants were permitted to introduce evidence as to a change of value occurring during the period, including the difference in price paid in two sales of a similar parcel occurring in 1955 and 1960.

▆▆ The court refused an instruction offered by defendants which stated, among other things, that flood control works are required to follow the "natural drainage system of the country," and that, if water is diverted out of its natural channel and discharged into a different channel, an increased burden is placed upon the land over which the new channel is located. Such an instruction would have been misleading here because it would have indicated that the district had acted wrongfully in condemning land for the purpose of a flood control channel and diverting water into the channel. The district, of course, had a legal right to do these things. ▆▆ Although other portions of the instruction may have been correct, the court was not required to rewrite it so as to eliminate the objectionable matter. (Cf. *Faulk* v. *Soberanes*, 56 Cal.2d 466, 470-471 [14 Cal.Rptr. 454, 363 P.2d 593]; *Shaw* v. *Pacific Greyhound Lines*, 50 Cal.2d 153, 158 [323 P.2d 391].)

Defendants point out that the award of $5,000 severance

damages is $650 less than the estimate given by the district's evaluation witness, and they contend that, since the sum allowed is lower than the lowest expert estimate, the award is not supported by the evidence. The witness estimated severance damages at $5,650 based upon added costs of development arising from the construction of the channel, namely, $150 for water mains, $3,500 for sewer installations, and $2,000 for a railroad bridge across the channel. With respect to the allowance in connection with the construction of a railroad bridge, the witness stated that if defendants should want a spur track to serve their property, it would cost $2,000 more to build a bridge across the district's channel than it would to build a bridge across a drainage facility adequate to serve defendants' needs.

The district's evaluation witness in estimating severance damages at $5,650 included the entire increased cost of the railroad bridge. He did not testify that a railroad bridge was essential to the economic development of defendants' remaining land, and he recognized that the necessity of meeting this increased cost would depend upon whether the owner of the property wanted a spur track. The jury was not required to conclude that the diminution in market value of the remaining land would necessarily be equal to the increased costs testified to by the witness, and in these circumstances the fact that the award of severance damages was $650 lower than the lowest expert estimate does not mean that the award was without support in the record.

The cases of *Redevelopment Agency* v. *Modell*, 177 Cal.App. 2d 321, 326-327 [2 Cal.Rptr. 245], and *People* ex rel. *Dept. of Public Works* v. *McCullough*, 100 Cal.App.2d 101, 105-106 [233 P.2d 37], relied on by defendants, are distinguishable. They did not involve the weight to be given to increased costs of development in determining the diminution of market value of the owner's remaining land, and they stand merely for the proposition that the trier of fact may not disregard expert evaluations where there is no reasonable basis in the record for doing so.

As we have seen, there was testimony that in order to develop defendants' property to its highest and best use it would be necessary to construct a drainage ditch and that the district's canal eliminated the need for such a facility. There was also testimony that it would have cost defendants $5,000 to dig the ditch. The jury therefore could properly determine that special benefits were conferred upon defendants by the

construction of the canal and that such benefits amounted to $5,000. The jury was adequately instructed on the law relating to special benefits, and the court did not err in refusing an instruction on the subject, offered by defendants.

An attempted appeal from the findings of fact and conclusions of law is dismissed, and the judgment is affirmed.

Traynor, J., Schauer, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.