[Civ. No. 13102. Third Dist. Dec. 17, 1971.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Respondent, v.
GIUMARRA FARMS, INC., Defendant and Appellant.

COUNSEL

Mack, Bianco, Means, Mack & Stone, Mack, Bianco, Means & Mack and D. Bianco for Defendant and Appellant.

Harry S. Fenton, John B. Matheny, Edward J. Connor, Jr., and Robert A. Munroe for Plaintiff and Respondent.

OPINION

**RICHARDSON, P. J.**—Defendant property owner appeals from a judgment in condemnation wherein the jury found that the remaining property received special benefits in the sum of $26,250, resulting from the construction of the condemner's improvements.

Before the commencement of these proceedings, defendant Giumarra Farms, Inc., owned a parcel of farm land consisting of 145.362 acres, situated west of Tehachapi and east of Bakersfield in Kern County. Prior to condemnation the land was bordered on the north by existing State Highway 58, known as the Edison Highway, on the east by Towerline Road, and on the south by Muller Road. Plaintiff condemner constructed on the parcel a four-lane limited access freeway running generally east and west and dividing the subject property into two remaining parcels, 33.43 acres to the north and 89.03 acres to the south. Condemner constructed a complex of on-and-off-ramps on the easterly edge of the subject property, which interchange served to funnel east and west bound freeway traffic to and from Towerline Road. The result of the construction is that both the northwest and southwest quadrants of the interchange are immediately contiguous to the remainder of the real property of defendant Giumarra Farms both north and south of the freeway.

The parties stipulated that the fair market value of the take was $28,663 and the total severance damage to the remainder was $37,000. Expert testimony presented by the condemner indicated that a special benefit was

conferred on the remainder of the property as to the northerly 5 acres by virtue of "sight prominence from the freeway to a westbound traveler," and as to 10 of the remaining southerly 89 acres "by virtue of suitability for highway speculation purposes." Additionally, construction of the interchange and the freeway was found to make the remainder of the property "a point for all traffic; the only part of this particular area where they can depart the freeway and enter the freeway and it becomes a magnet to the highway traffic that is going by in this area." Condemner's expert testified that the construction of the off-ramps made the subject property accessible and inviting to the traveling public. This, in turn, would result in rezoning to a higher use and a markedly greater land value to the remainder.

■ Defendant contends, first, that the issue of the existence of any special benefits should have been determined by the trial court rather than the jury.

The present state of the California law is not altogether clear on whether the existence (as distinguished from amount) of special benefits constitutes a factual issue or one of law. The later decisions appear to assume that both the existence and amount of special benefits are factual issues to be resolved by the jury. (*L. A. County Flood etc. Dist.* v. *McNulty* (1963) 59 Cal.2d 333, 338-339 [29 Cal.Rptr. 13, 379 P.2d 493]; *United Cal. Bank* v. *People* ex rel. *Dept. Pub. Wks.* (1969) 1 Cal.App.3d 1, 8 [81 Cal.Rptr. 405]; *People* ex rel. *Dept. Pub. Wks.* v. *Schultz Co.* (1954) 123 Cal. App.2d 925, 936 [268 P.2d 117].) *City of Hayward* v. *Unger* (1961) 194 Cal.App.2d 516, 519 [15 Cal.Rptr. 301], is a clear holding that both the existence and nature of benefits is a fact question, the trier in that case being the court. However, in *People* v. *Ricciardi* (1943) 23 Cal.2d 390, at page 402 [144 P.2d 799], the Supreme Court, quoting from the earlier case of *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 545, 556 [147 P. 238] stated: " 'It follows that, except those relating to compensation, the issues of fact in a condemnation suit, are to be tried by the court, and that if the court submits them to a jury it is nevertheless required to make findings either by adopting the verdict thereon or by making findings in its own language.' " The *Ricciardi* court, quoting from *Oakland* v. *Pacific Coast Lumber etc. Co.,* 171 Cal. 392 [153 P. 705], added (at pp. 402-403): " '. . . It is only the "compensation," the "award," which our constitution declares shall be found and fixed by a jury. All other questions of fact, or of mixed fact and law, are to be tried, as in many other jurisdictions they are tried, without reference to a jury. [Citation.]' . . . .

"It was therefore within the province of the trial court and not the jury to pass upon the question whether under the facts presented, the defendants' right of access will be substantially impaired. If it will be so impaired,

the extent of the impairment is for the jury to determine. This is but another way of saying that the trial court and not the jury must decide whether in a particular case there will be an actionable interference with the defendants' right of access. . . ."

Notwithstanding the apparent force of the later decisions, we need not attempt to resolve these divergent views because the record before us reflects that the trial court did in fact make and enter its independent findings of fact herein, which findings, like those of the jury, were adverse to defendant.

■ Defendant's second contention raises a more serious and complicated issue. Briefly and narrowly stated, the question posed is whether special benefits may attach to the owner's remaining land by the concentration and funneling of vehicular traffic caused by the location, construction and operation of a freeway and interchange on the land taken..

Surprisingly, this appears to be a matter of first impression in California.

■ Certain principles of general application have long been accepted. The constitutional guarantee of just compensation contained in article I, section 14, of the California Constitution has been construed to permit an offset against damages of benefits to the remainder, but two important refinements have developed. While initially the offset was permitted against damages generally, only severance damages may now be so reduced. (*Contra Costa County Water Dist.* v. *Zuckerman Constr. Co.* (1966) 240 Cal.App.2d 908, 909-912 [50 Cal.Rptr. 224]; compare *S. F., A. & S. R.R. Co.* v. *Caldwell* (1866) 31 Cal. 367, 374-376; see *Benefits and Just Compensation in California* (1969) 20 Hastings L.J. 764, 765-767.) Secondly, the kinds of benefits for which an offset has been permitted have been limited. In *Beveridge* v. *Lewis* (1902) 137 Cal. 619, 623-624 [67 P. 1040, 70 P. 1083], the court in a classic statement distinguished general benefits, which it defined as those which "consist in an increase in the value of land common to the community generally, from advantages which will accrue to the community from the improvement," from special benefits, defined "as result[ing] from the mere construction of the improvement, and [which] are peculiar to the land in question." It is special benefits alone that are offset against severance damages.

The California rule of special benefits has been criticized as illogical, inequitable and unduly favorable to the landowner. (*Benefits and Just Compensation in California* (1969) 20 Hastings L.J. 764, 772.) There it has been compared unfavorably with the federal rule (33 U.S.C.A. § 595), which, in effect, compares the value of the entire parcel before the take and the value of the remainder, taking into consideration any elements of

severance and benefits. Such a rule would conform to the original California doctrine. (*S. F., A. & S. R.R. Co.* v. *Caldwell, supra,* 31 Cal. 367.) Nonetheless, the *Beveridge* principle remains the law of California.

The enunciation of the rule, however, has proven somewhat easier than its application. Appellate courts have found special benefits in varying factual situations: for example, new access to a public road or highway where none existed before, if accompanied by an increase in market value (*Los Angeles* v. *Marblehead Land Co.,* 95 Cal.App. 602 [273 P. 131]); direct improvement to the land occasioned by the public project (*L. A. County Flood etc. Dist.* v. *McNulty* (1963) 59 Cal.2d 333 [29 Cal.Rptr. 13, 379 P.2d 493]; *People* v. *Thomas* (1952) 108 Cal.App.2d 832 [239 P.2d 914]); probability that a higher and better use of the land will result from the project (*People* ex rel. *Dept. of Public Works* v. *Hurd* (1962) 205 Cal.App.2d 16 [23 Cal.Rptr. 67]); and an increase in the flow of accessible traffic (*City of Hayward* v. *Unger* (1961) 194 Cal.App.2d 516 [15 Cal.Rptr. 301]). The application of the *Beveridge* principle has not been uniform and it has been criticized as causing "confusion." (See Gleaves, *Special Benefits in Eminent Domain, Phantom of the Opera* (1965) 40 State Bar J. 245, 249.)

Nor has there been uniformity of opinion in other jurisdictions as to what constitutes benefits chargeable against the landowner in a condemnation action. "Upon this subject there is a great diversity of opinion and more rules, different from and inconsistent with each other, have been laid down than upon any other point in the law of eminent domain." (3 Nichols on Eminent Domain 57.)

Certain principles helpful to a resolution of the problem herein presented have been generally accepted, however. ■ The benefit does not cease to be special because it is enjoyed by other residents in the immediate neighborhood or upon the same street. (*United States* v. *River Rouge Improvement Co.,* 269 U.S. 411 [70 L.Ed. 339, 46 S.Ct. 144].) The possibility that benefits might subsequently be terminated by the condemner does not preclude the deduction of the benefit, although its duration may properly be considered in determining its present value. (*People* ex rel. *Dept. of Public Works* v. *Edgar,* 219 Cal.App.2d 381 [32 Cal.Rptr. 892].) ■ The benefit may come from a nonphysical effect on the land, such as improved access and the better accommodation of transportation. (*People* v. *Edgar, supra.*) Finally, access to improved roads and increased traffic, both vehicular and pedestrian, constitutes a special benefit. (*City of Hayward* v. *Unger, supra,* 194 Cal.App.2d 516.)

The problem remains to establish a standard for differentiating between

general benefit to the community and special benefits to the specific property in a consistent and meaningful way.

In the instant case, no new access to the remaining property is afforded by the construction of the freeway and off-ramps. In the before condition, the landowner could move freely and fully in all directions along a state highway with access from 590 feet on the northerly boundary of the property, along Muller Road on the southerly boundary and along Towerline Road on the easterly boundary. Nonetheless, what is added to the picture, and what constitutes the claim of special benefit, is that by virtue of the construction the landowner's property is now located on two quadrants of a freeway interchange. The property presently zoned agricultural reasonably can be expected to be rezoned to a higher use, and portions of the property are suited for service, rest and food facilities. In short, the property has become a magnet for traffic-related commercial activity with measurable financial value and profit to defendant.

Do such factors, coupled with evidence of enhanced value, provide a basis upon which a trier of fact may conclude that special benefits exist in mitigation of severance damages?

The federal and state Constitutions only assure the landowner "just compensation." As was said 75 years ago by the United States Supreme Court, compensation must be " 'just, not merely to the individual whose property is taken, but to the public which is to pay for it.' [Citation.] The just compensation required by the Constitution to be made to the owner is to be measured by the loss caused to him by the appropriation. He is entitled to receive the value of what he has been deprived of, and no more. To award him less would be unjust to him; to award him more would be unjust to the public.

"Consequently, when part only of a parcel of land is taken for a highway, the value of that part is not the sole measure of the compensation or damages to be paid to the owner; but the incidental injury or benefit to the part not taken is also to be considered. When the part not taken is left in such shape or condition as to be in itself of less value than before, the owner is entitled to additional damages on that account. When, on the other hand, the part which he retains is specially and directly increased in value by the public improvement, the damages to the whole parcel by the appropriation of part of it are lessened." (*Bauman* v. *Ross,* 167 U.S. 548, 574 [42 L.Ed. 270, 283, 17 S.Ct. 966].)

It has been said by one highly respected authority in the field: "Subject to these limitations the tribunal is entitled to consider the entire plan of

improvement and the probable effect of the improvement upon the use and value of the land, and it may consider all of the evidence, pro and con, on that issue. It may consider evidence of improved outlet to market to said premises, of higher and better use, as for subdivision, residential, or commercial purposes, frontage on a better road, modes of access, and, in general, any substantial evidence that the improvement will. add to the convenience, accessibility, use, and value of the land if such benefit is not shared by nonabutting lands. The fact that other lands abutting on the improvement are also specially benefited, is immaterial.

"One of the distinguishing tests of special benefit has been said to depend on whether or not the special facilities afforded by the improvement have advanced the market value of the property beyond the mere general appreciation of the property in the neighborhood." (3 Nichols on Eminent Domain 72.)

■■■ The enhancement in value of the subject property was described in the testimony of the condemner's expert, Gerald E. Fisher. Fisher pointed out freeway entrances and exits at two-mile intervals. His opinion was that as to 5 acres in the northerly portion of the remainder a benefit accrued from sight prominence to a westbound traveler and as to 10 acres in the southerly remainder adjacent to Towerline Road a "highway speculation" benefit was conferred. He estimated the net benefit accruing to the northerly 5 acres to be $37,250, and the net benefit to the southerly 10 acres at $4,500. Fisher defined "highway speculation" as "those uses that would be consistent with those found around other interchanges in the state highway system," such as mobile home sites, drive-ins, fruit stands and truck-stop restaurants. He inquired of the appropriate public officials regarding "reasonable probability" of a zone change from agricultural to commercial use, and he supported his appraisals and opinions with comparable sales.

The court holds that the trier of fact could properly find that the value of the subject property was enhanced by the unique combination of access and traffic conferred upon it by the improvements. There is no satisfactory basis upon which the two elements can be separated. Access without traffic or traffic without access would not have conferred a benefit, but the combination of the two, coupled with the site situation immediately contiguous to the quadrants of the freeway interchange, constitutes a benefit which was special and measurable. ■■■ In principle, where there is an enhancement in value to the remainder caused exclusively by the improvement, there is a conferred benefit. And if a conferred benefit, the condemning public is entitled to an appropriate credit against severance damages. No

California authority has been cited, nor has our independent research disclosed any support for defendant's contention that benefits, to be special, must result from physical alteration in the character of the land which is claimed to be benefitted. This court finds no persuasive policy reason why the trier of fact should not be permitted to find such benefit. Therefore, its determination that such benefits exist in the sum of $26,250, based as it is on sufficient evidence, is binding upon this court on appeal. (See *City of Hayward* v. *Unger, supra,* 194 Cal.App.2d 516, 519.)

We are mindful that the possibility of inequity may be inherent in permitting a deduction from severance damages of the kind of claimed benefit herein presented. The property of the landowner's neighbor may also be enhanced to some extent by the improvement, yet the neighbor is not charged with that benefit. However, although increased facilities for travel by the public usually benefit, to some extent, the entire adjacent community, it is clear from the testimony of condemner's experts that they were well aware of the distinction between special and general benefits, and that their opinions, based upon comprehensive analysis of the issue, provided substantial evidence that construction of the improvement left defendant's remaining property in a special and unique position of benefit with respect to the freeway, the flow of traffic along the freeway and the surrounding neighborhood.

The judgment is affirmed. Appellant is to recover costs on appeal.

Friedman, J., and Regan, J., concurred.

A petition for a rehearing was denied January 14, 1972, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1972.